UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MADONA RAY LITTLE AND
LEMMIE HOWARD, JR.                                                    PLAINTIFFS

V.                                               CIVIL ACTION NO. 3:24-CV-783-DPJ-ASH

EAGLE EXPRESS FEDERAL
CREDIT UNION                                                          DEFENDANT

ORDER

Plaintiffs Madonna Ray Little and Lemmie Howard, Jr. assert that Defendant Eagle Express Federal Credit Union (Eagle Express) improperly repossessed their vehicle despite bankruptcy-court proceedings and then took other actions to improperly collect debts on two loans.  Plaintiffs now seek summary judgment [47], but questions of fact exist, so the Court denies their motion.

I.        Facts and Procedural Background

In 2019, pro se Plaintiff Little and her son Howard jointly financed the purchase of a 2018 Dodge Challenger through Defendant Eagle Express.  Am. Compl. [44] at 2; *see also* 2019 Loan Agreement [50-2].  Two years later, on November 21, 2021, Little obtained a personal loan for $6,000 from Eagle Express.  Am. Compl. [44] at 3; *see also* 2021 Loan Agreement [50-3].

Ten months after signing the second loan, Little filed a Chapter 7 voluntary petition with the United States Bankruptcy Court for the Northern District of Mississippi.  *In re Ray*, No. 22-12172-SDM (Bankr. N.D. Miss. Aug. 31, 2022), Pet. [1] (*Ray I*).[1]  By statute, the petition prompted an automatic stay that prevented collection efforts.  But the bankruptcy court dismissed that petition on November 21, 2022, because Little failed to pay the filing fee.  *Id.*, Order [32].

---

[1] In her bankruptcy proceedings, Little used "Ray" as her last name.

The bankruptcy court then entered a final decree closing *Ray I* on January 5, 2023. *Id.*, Final Decree [35].

With the first bankruptcy case closed, Eagle Express repossessed the Dodge Challenger in Texas on September 27, 2023. Nelson Aff. [50-1] ¶¶ 6–7. The next day, Little called Defendant informing it that she had filed another Chapter 7 petition in the Northern District on July 24, 2023. *Id.*; *see In re Ray*, No. 23-12214-SDM (Bankr. N.D. Miss. July 24, 2023), Pet. [1] (*Ray II*). Eagle Express therefore returned the vehicle to Plaintiffs, Nelson Aff. [50-1] ¶ 8, and Little paid off the vehicle loan on October 3, 2023. *Id.* ¶ 9. The bankruptcy court terminated the second automatic stay two days later on October 5, 2023. *Ray II*, Order [20] at 1.

On December 10, 2024, Plaintiffs sued Eagle Express. Compl. [1] at 3. They now seek summary judgment on nine claims (some with subparts), though not every claim was asserted in their Amended Complaint [44]. Plaintiffs' motion is fully briefed, and the Court has the necessary subject-matter jurisdiction to rule.

II.    Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute over any material fact and that the moving party is entitled to judgment as a matter of law. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).

Both sides must support their positions with record evidence.  As stated in Rule 56(c)(1)(a):

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

A party cannot satisfy that standard with "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Courts must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016).  And when doing so, they may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  But those standards apply only when "both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

Finally, these rules apply equally to pro se litigants.  *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).  Although pro se pleadings must be viewed liberally, such plaintiffs are still required to follow Rule 56, and the Court has no discretion to consider unsupported assertions and evidentiary materials that fall short of Rule 56's requirements. *Id*.

III.   Analysis

Plaintiffs address nine causes of action.  *See generally* Mot. [47].  According to Eagle Express, some of those claims were never asserted in the Amended Complaint, which precludes summary judgment on those issues. *See, e.g.*, Def.'s Resp. [50] at 3.  But Eagle Express still

addresses most of the new claims on the merits.  The Court will do likewise as it considers the nine causes of action in order.[2]

A.    Automatic-Stay Violation

Plaintiffs first seek summary judgment for their claim that Eagle Express violated an automatic stay when it repossessed their vehicle without first seeking relief from the bankruptcy court.  Mot. [47] at 4.  Under 11 U.S.C. § 362(a)(3), a petition filed under Chapter 7 "operates as a stay" and thus prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate repossession."  And under § 362(h), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

The question here is whether Eagle Express willfully violated an automatic stay.  A willful violation

> does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Chestnut*, 422 F.3d 298, 302 (5th Cir. 2005) (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989)).  "Thus, there are three elements to a claim under § 362(h):  (1) the defendant must

---

[2] Eagle Express did not move to dismiss the allegedly new claims, which would require a separate motion.  *See* L.U. Civ. R. 7(b)(3)(E) ("A response to a motion may not include a counter-motion in the same document.  Any motion must be an item docketed separately from a response").  Because there is no motion to dismiss, the Court will not now decide whether these claims can proceed to trial.  The Court will, however, address the issue at the pretrial conference.

have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay." *Id.*

Plaintiffs say Eagle Express violated the automatic stay because it repossessed the Dodge Challenger while Little was in an "active" Chapter 7 bankruptcy proceeding. Mot. [47] at 4. Even if true, Plaintiffs still must establish Eagle Express knew the stay was in effect. *See In re Chestnut*, 422 F.3d at 302. And that requires evidence. At most Plaintiffs offer the conclusory assertion that "[a]t all relevant times, Eagle Express Federal Credit Union had actual notice of my bankruptcy filing and was aware of the automatic stay in effect." Little Decl. [49] ¶ 3.

There are two problems with that. First, "[c]onclusional allegations and . . . speculation" won't do. *TIG Ins. Co.*, 276 F.3d at 759. Plaintiffs must instead "demonstrate the absence of a genuine issue of material fact" with record evidence. *Celotex Corp.*, 477 U.S. at 322. Second, they must cite the "particular parts" of the record that support their assertions. Fed. R. Civ. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's" summary-judgment position. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

But even if Plaintiffs had met their initial burden (they haven't), the Court would still find that a genuine issue of material fact exists. Eagle Express's Chief Executive Officer Nancy Nelson stated that "Eagle was not advised of the [bankruptcy] petition until Platiniff Little called following the repossession of the vehicle on September 27, 2023." Nelson Aff. [50-1] ¶ 7. Nelson also claims that Little's call "was the first knowledge Eagle had of the second bankruptcy case." *Id.* If true, this means Eagle Express did not know about the automatic stay when it repossessed the vehicle. *See In re Johnson*, 478 B.R. 235, 246 (Bankr. S.D. Miss. 2012). As noted, the Court may not weigh the evidence, and it must view the evidence in the light most

favorable to the nonmovant (i.e., Eagle Express).  This affidavit creates a fact question for the jury.  *Reeves*, 530 U.S. at 150.

Because there is a genuine issue of material fact as to Eagle Express's knowledge of the stay, the Court denies Plaintiffs' motion as to the automatic-stay violation.

B.      Discharge-Injunction Violation

Plaintiffs allege Eagle Express violated a discharge injunction under 11 U.S.C. § 524(a). Under that section "a discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor.'"  *In re Lane*, No. 19-50681-KMS, 2025 WL 1232602, at *3 (Bankr. S.D. Miss. Apr. 28, 2025) (quoting 11 U.S.C. § 524(a)(2)).  To be liable for a willful violation of § 524(a)(2), "the offending creditor must '(1) know the injunction has been entered, and (2) intend[] the actions that violate it.'"  *Id.* (alteration in original) (quoting *In re Fauser*, 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016)).

Plaintiffs allege that Eagle Express violated § 524(a) by withdrawing $450 from a bank account included in the bankruptcy proceeding, coercing payments on discharged debts, and refusing to return repossessed property.  Mot. [47] at 5.  These three claims, without more, fail for the same reasons the automatic-stay claim failed.

Put simply, Plaintiffs have cited no record evidence showing that Eagle Express took any of the disputed actions or knew about the discharge injunction.  Speculative assertions are not evidence.  *TIG Ins. Co.*, 276 F.3d at 759.  And because Plaintiffs failed to "identify[] . . . portions of [the record] which [they] believe[] demonstrate the absence of a genuine issue of material fact," the Court denies their motion as to their discharge-injunction claim.  *Celotex Corp.*, 477 U.S. at 322.

C.      Fair Debt Collection Practices Act (FDCPA)

Plaintiffs claim Eagle Express violated the FDCPA.  Mot. [47] at 5 (citing 15 U.S.C.

§§ 1692e–f).  To "state a FDCPA claim, Plaintiffs must allege facts sufficient to show the

following:  '(1) [Plaintiffs have] been the object of collection activity arising from a consumer

debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has

engaged in an act or omission prohibited by the FDCPA.'"  *Sequel Grp., Inc. v. Wilmington Sav.*

*Fund Soc'y FSB*, No. 3:16-CV-02056-N, 2017 WL 3704833, at *3 (N.D. Tex. June 7, 2017)

(alterations in original) (quoting *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-988-D, 2013

WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013)).

The parties dispute only the final element—whether Eagle Express's actions violated the

FDCPA.  Def.'s Resp. [50] at 6.  According to Plaintiffs, Eagle Express violated the FDCPA by

"[a]ttempting to collect a discharged debt."  Mot. [47] at 6.  They say this violated two FDCPA

provisions.  *Id.* at 5 (citing 15 U.S.C. §§ 1692e–f).  Section 1692e prohibits the "use any false,

deceptive, or misleading representation or means in connection with the collection of any debt"

while § 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any

debt."  15 U.S.C. §§ 1692e–f.

Here again, Plaintiffs' conclusions are not evidence, and they have cited no record

evidence showing Eagle Express knowingly attempted to collect a discharged debt.  As their lone

authority for this this claim states, "[T]he requisite inquiries under § 1692e and § 1692f are

*necessarily fact-bound*."  *McMillan v. Collection Pros., Inc.*, 455 F.3d 754, 760 (5th Cir. 2006)

(emphasis added).  And without any properly supported facts from Plaintiffs, they have not

established the absence of a fact question.  *Celotex Corp.*, 477 U.S. at 322.  The Court denies

summary judgment for Plaintiffs on their FDCPA claim.

D.      Truth in Lending Act (TILA)

Plaintiffs claim that Eagle Express violated the TILA by failing to disclose cross collateralization, failing to disclose accurate payoff breakdowns for the two loans, and misrepresenting title ownership of the vehicle.  Mot. [47] at 6.  "The purpose of the TILA is to 'promote the informed use of consumer credit by requiring disclosures about its terms and costs.'"  *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 184 (S.D. Tex. 2007) (quoting 12 C.F.R. § 226.1(b) (2026)).  "The regulations implementing TILA are known as 'Regulation Z.'"  *Billings v. Propel Fin. Servs., L.L.C.*, 821 F.3d 608, 609–10 (5th Cir. 2016). The Court will consider those regulations as to Plaintiffs' three theories.

***Cross collateralization.***  Plaintiffs first say Eagle Express violated the TILA by failing to disclose cross-collateralization clauses that gave Defendant a security interest in the Dodge Challenger under both loan agreements.  Mot. [47] at 6; *see also* Am. Compl. [44] at 3 ("Defendant cross-collateralized Loan 2S with the vehicle loan (Loan 2DOD18) without informing or obtaining consent from either Plaintiff.").

Regulation Z requires a creditor to disclose "[t]he fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type."  12 C.F.R. § 226.18(m) (2026).  These disclosures must be made "clearly and conspicuously in writing" and "shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 or § 226.47."  *Id.* § 226.17(a) (footnotes omitted).

The disputed contracts both included "TRUTH IN LENDING DISCLOSURE" boxes on their first pages.

**TRUTH IN LENDING DISCLOSURE ('e' means an estimate)**

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf | Total of Payments The amount You will have paid after You have made all payments as scheduled. | Total Sale Price The total cost of Your purchase on credit is E which includes Your downpayment of |
|---|---|---|---|---|
| ▓▓▓ %E | ▓▓▓ E | ▓▓▓ E | ▓▓▓ E | ▓▓▓ |

| Your Payment Schedule Will Be: | | | | Prepayment: If You pay off early You will not have to pay a penalty. |
|---|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | | Required Deposit: The Annual Percentage Rate does not take into account Your required deposit, if any. |
| 59 | ▓▓▓ | MONTHLY | BEGINNING   05/30/2019 | Demand: ☐ This obligation has a demand feature. |
| 1 | $ | | 04/30/2024 | ☐ All disclosures are based on an assumed maturity of one year. |

Property Insurance: You may obtain property insurance from anyone You want that is acceptable to the Credit Union. If You get the insurance from the Credit Union You will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| | ▓▓▓ |

Late Charge:

Members will be assessed 20% of the interest due after your payment is 14 days late.

Security: Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| DODGE | CHALLENGER | 2018 | 2C3CDZC95JH245264 | VEH | ▓▓▓ $ $ | |

Other (Describe)

Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

2019 Loan Agreement [50-2] at 1.

**TRUTH IN LENDING DISCLOSURE ('e' means an estimate)**

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf | Total of Payments The amount You will have paid after You have made all payments as scheduled | Total Sale Price The total cost of Your purchase on credit is $ E which includes Your downpayment of |
|---|---|---|---|---|
| ▓▓▓ E | ▓▓▓ E | ▓▓▓ E | $ ▓▓▓ E | |

| Your Payment Schedule Will Be: | | | | Prepayment: If You pay off early You will not have to pay a penalty. |
|---|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | | Required Deposit: The Annual Percentage Rate does not take into account Your required deposit, if any. |
| 47 | $188.00 | MONTHLY | BEGINNING   11/16/2021 | Demand: ☐ This obligation has a demand feature. |
| 1 | $149.97 | | 10/16/2025 | ☐ All disclosures are based on an assumed maturity of one year. |

Property Insurance: You may obtain property insurance from anyone You want that is acceptable to the Credit Union. If You get the insurance from the Credit Union You will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ | $ |

Late Charge:

Members will be assessed 20% of the interest due after your payment is 14 days late.

Security: Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ $ $ | |

Other (Describe)

Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

2021 Loan Agreement [50-3] at 1.

As shown, the April 2019 loan agreement lists the Dodge Challenger as collateral securing the loan.  2019 Loan Agreement [50-2] at 1.  In contrast, the 2021 Loan Agreement lists nothing as collateral.  2021 Loan Agreement [50-3] at 1.  But both Loan Agreements state in their Truth in Lending Disclosures that "[c]ollateral securing other loans with the Credit Union may also secure this Loan."  *Id.*  And elsewhere the Loan Agreements both state,

> Unless prohibited by applicable law, the security interest also secures any other loans, including any credit card loan, You have now or receive in the future from Us and any other amounts You owe Us for any reason now or in the future, except any loan secured by Your principal dwelling.

2019 Loan Agreement [50-2] at 2; 2021 Loan Agreement [50-3] at 2.  Eagle Express argues that this is enough to satisfy the TILA, and Plaintiffs have provided no legal analysis suggesting otherwise.

This leaves little to go on.  "While this Court will afford *pro se* plaintiffs significant leeway to advance their contentions, the Court is not obliged to perform a *pro se* plaintiff's research or furnish their arguments for them."  *United States v. Green*, No. 6:18-CR-00183-01, 2025 WL 221807, at *7 (W.D. La. Jan. 15, 2025).

In any event, other claims must proceed to trial, so it makes sense to carry this claim forward as well.  "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'"  *Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)).

The Court therefore denies Plaintiffs' motion for summary judgment as to the cross-collateralization TILA claim.

***Payoff-breakdown.***  According to Plaintiffs, the Loan Agreements failed to disclose accurate payoff breakdowns for the two loans.  Pls.' Mot. [47] at 6.  Eagle Express's only

response is that Plaintiffs never asserted this claim in their Amended Complaint. Def.'s Resp. [50] at 7. That appears to be true. While the Amended Complaint does mention collateralization and "Truth in Lending," Am. Compl. [44] at 3, the payoff-breakdown theory appears to be new. If so, the deadline to amend pleadings passed in June 2025, and Plaintiffs have neither sought an extension nor established a basis to ignore that deadline. *See* Case Mgmt. Order [28]. If this claim is not properly before the Court, then the Court may not grant summary judgment in Plaintiffs' favor.

There are other problems too. Plaintiffs neither cite the provisions of Regulation Z that Eagle Express allegedly violated nor analyze the Loan Agreements under those requirements. Reviewing the Loan Agreements [50-2, 50-3] (as attached to Eagle Express's response) doesn't answer the question either. The 2021 Loan Agreement does appear to include a payment schedule. *See* 2021 Loan Agreement [50-3] at 1. But the 2019 Loan Agreement has been redacted in a way that makes it impossible to tell. *See* 2019 Loan Agreement [50-2] at 1.

Without knowing what has been redacted, and without any legal analysis from Plaintiffs explaining how exactly this disclosure failed, the Court is left with nothing more than speculation. As with the cross-collateralization claim, the Court will not do Plaintiffs' work for them. *See Green*, 2025 WL 221807, at *7. The motion is denied.

***Ownership.*** Plaintiffs say Eagle Express failed to disclose the "ownership rights to co-borrower[s]." Mot. [47] at 6. They essentially claim that Eagle Express violated the TILA because Howard is listed as a co-borrower on the 2019 Loan Agreement [50-2] but isn't listed as an owner of the vehicle. *See* Certificate of Title [44-6] at 27.

Plaintiffs provide no support for their claim other than generically citing the TILA. Mot. [47] at 6. They neither point to a specific TILA provision Eagle Express violated nor cite a

11

disclosure requirement from Regulation Z that it ignored.  In addition, Eagle Express presented Nelson's affidavit stating that "Eagle had no input into the decision of who 'owned' the vehicle or whose name went on the title to the vehicle."  Nelson Aff. [50-1] ¶ 3.  Plaintiffs have not established a basis for summary judgment in their favor, so the motion is denied.

E.       State-Law Claims

Plaintiffs also moved for summary judgment on their five state-law claims.  The motion merely lists these causes of action without citing any record evidence or explaining why judgment should be entered.  For this reason alone, the Court could deny the motion as to each state-law claim.  The Court will, however, take a closer look.

1.       Conversion

The parties dispute whether Eagle Express had authority to repossess the Dodge Charger and withdraw $450 from Little's bank account.  Mot. [47] at 7.  "To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand."  *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998) (internal quotation marks and citation omitted).  "[T]here is a conversion only when there is an 'intent to exercise dominion or control over goods which is inconsistent with the true owner's right.'"  *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 69 (Miss. 2004) (quoting *First Investors Corp. v. Rayner*, 738 So. 2d 228, 234 (Miss. 1999)).  "While intent is necessary, it need not be the intent to be a wrongdoer."  *Id.*

***The Vehicle.***  The Court first considers whether Eagle Express "exercise[d] an unauthorized act of dominion or ownership over the" Dodge Challenger.  *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989) (citing *Masonite Corp. v. Williamson*, 404 So. 2d

565, 567 (Miss. 1981)). To answer this question, the Court must determine whether the Loan Agreement gave Eagle Express the contractual authority to repossess the Dodge Challenger. *See Martin v. Cook*, 114 So. 2d 669, 671(Miss. 1959) (holding conversion theory unpersuasive when defendant "clearly had a contractual right to" repossess plaintiff's truck).

When a borrower is in default, the loan agreement provides,

> [Eagle Express] may demand immediate payment of the outstanding balance of the Loan without giving You advance notice and *take possession of the Property*. You agree *the Credit Union has the right to take possession of the Property* without judicial process if this can be done without breach of the peace. If We ask, You promise to deliver the Property at a time and place We choose. If the Property is a motor vehicle or boat, You agree that We may obtain a key or other device necessary to unlock and operate it, when You are in default.

2021 Loan Agreement [50-2] at 4 (emphasis added).

Plaintiffs say the repossession was "unauthorized," Mot. [47] at 7, and provide an invoice showing Little paid a $450 involuntary repossession fee, Invoice [44-4] at 8. On the invoice, someone wrote, "This invoice proves their were no behind payments. Payments were up to date, only paid repo fees." *Id.* (unaltered).

This document doesn't "prove" Plaintiffs weren't in default. Instead, it conflicts with Nelson's claim that "plaintiffs were behind on payments on both the vehicle and personal loans in 2023." Nelson Aff. [50-1] ¶ 6. As noted, the Court may not make credibility decisions or weigh the evidence, and it must view the evidence in the light most favorable to the nonmovant—Eagle Express. *See Rite Way Serv.*, 819 F.3d at 239; *Reeves*, 530 U.S. at 150. Therefore, the Court will not grant summary judgment on Plaintiffs' conversion theory as to the vehicle.

***Cash Withdrawal.*** As Eagle Express correctly notes, there is no record evidence showing "what the withdrawal was for, that it even occurred, or that Eagle lacked the authority to make

13

the withdrawal." Def.'s Resp. [50] at 8. In any event, it is unlikely that withdrawing cash from an account could constitute conversion. "An action will not lie for the conversion of a mere debt or chose in action. Hence, where there is no obligation *to return identical money*, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *Mossler Acceptance Co. v. Moore*, 67 So. 2d 868, 871 (Miss. 1953) (emphasis added) (internal quotation marks and citation omitted); *see also McGee v. Comprehensive Radiology Servs., PLLC*, 340 So. 3d 328, 330 (Miss. 2022).

In sum, the Court denies Plaintiffs' motion as to their conversion claim.

> 2.    Fraud

Plaintiffs also seek summary judgment on their fraud claim. Mot. [47] at 7. In Mississippi, for a plaintiff to establish a fraud claim, he must show

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Gallegos v. Mid-S. Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1059 (Miss. Ct. App. 2007).

As noted, Plaintiffs offer neither cited evidence nor analysis explaining why they are entitled to summary judgment on their fraud claim. They merely say: "Fraud—False statements about loan balance, title status, and discharge." Mot. [47] at 7. This apparently references the same issues asserted under the federal statues, and for the same reasons they are not entitled to summary judgment on those federal claims, the Court denies summary judgment on the fraud claim.

3.      Unjust Enrichment

Plaintiffs claim Defendant "[c]oerced payments of $5,653.13 and $1,300 under false pretenses." Mot. [47] at 7.[3] In Mississippi,

> unjust enrichment applies when one party has mistakenly paid another party . . . [and] in situations where *no legal contract exists*, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received.

*Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (emphasis added) (footnotes omitted). "For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him." *Montgomery v. CitiMortg., Inc.*, 955 F. Supp. 2d 640, 656 (S.D. Miss. 2013).

Plaintiffs offer merely a conclusory assertion that Eagle Express coerced payments under false pretenses. Mot. [47] at 7. There is no record evidence cited, as Rule 56(c)(1)(A) requires, and no legal analysis. In any event, there are written contracts between the parties. *Willis*, 82 So. 3d at 588. The Court denies the motion as to this claim.

4.      Civil Conspiracy

Plaintiffs base their civil-conspiracy claim on a single assertion—Eagle Express employees "coordinated to pressure Plaintiffs and conceal facts." Mot. [47] at 7. "Under Mississippi law, the elements of a civil conspiracy are: '(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result.'" *Rex*

---

[3] Their Amended Complaint asserts unjust enrichment but for a different amount: "Defendant retained $1,300 and $486 from Plaintiff Little without lawful justification or documentation." Am. Compl. [44] at 5.

*Distrib. Co. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quoting *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013)).

Plaintiffs have cited no record evidence and offered no legal analysis suggesting that a civil conspiracy existed. They instead offer the conclusory assertion that "[e]mployees coordinated." Mot. [47] at 7. Thus, the Court denies the motion as to the civil-conspiracy claim.

5.    Negligent/Intentional Infliction of Emotional Distress

Plaintiffs lastly claim they suffered negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED) after Eagle Express repossessed the Dodge Challenger. *See* Mot. [47] at 7. Plaintiffs only explanation is this: "Negligent/Intentional Infliction of Emotional Distress—Resulting from loss of transportation, stability, and security." *Id.*

***Negligent Infliction of Emotional Distress.*** To "recover emotional distress damages resulting from ordinary negligence, a plaintiff must prove some sort of physical injury or demonstrable harm, whether it be physical or mental, and that the harm must have been reasonably foreseeable to the defendant." *Alston v. Miss. Dep't of Emp. Sec.*, 300 So. 3d 543, 549 (Miss. Ct. App. 2020) (quoting *Humphries v. Virlilia Rd. Conservation Grp. LLC*, 276 So. 3d 1272, 1278 (Miss. Ct. App. 2018)).

Plaintiffs never explain how Eagle Express acted negligently. But assuming this just piggybacks off the alleged conduct premising the federal claims, that conduct has not been supported with record evidence. Also, NIED claims require proof of a physical injury or demonstrable harm. *Alston*, 300 So. 3d at 549. Neither Plaintiff proves they suffered any physical effect from the vehicle repossession. They merely claim they suffered emotional

16

distress without any support.  *See* Howard Decl. [48] ¶ 18; Little Decl. [49] ¶ 8.  Without more, the Court must deny Plaintiffs' motion as to the NIED claim.

***Intentional Infliction of Emotional Distress.***  In Mississippi, an IIED claim "requires conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Craig v. City of Yazoo*, 984 F. Supp. 2d 616, 630 (S.D. Miss. 2013) (quoting *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013)).  This is a "very high" standard that focuses on the "defendant's conduct and not the plaintiff's emotional condition."  *Orr v. Morgan*, 230 So. 3d 368, 376 (Miss. Ct. App. 2017) (quoting *Robinson v. Hill City Oil Co.*, 2 So. 3d 661, 668 (Miss. Ct. App. 2008)).

Aside from boilerplate statements about their emotional states, Plaintiffs have provided no information that suggests Eagle Express's conduct exceeded "all possible bounds of decency." *Craig*, 984 F. Supp. 2d at 630.  Again, Plaintiffs have not cited evidence showing that Eagle Express breached any duties.  Accordingly, the Court denies the motion for Plaintiffs' IIED claim.

IV.    Conclusion

The Court has considered all arguments.  Those not specifically addressed would not alter the results.  For all these reasons, the Court denies Plaintiffs' motion for summary judgment [47].

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE